IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ANTHONY R. MURPHY,

                    Plaintiff,

          v.                  CASE NO. 06-3249-SAC

JIM JENSEN, et al.,

                    Defendants.

<u>MEMORANDUM AND ORDER</u>

The plaintiff in this civil rights action, 42 U.S.C. 1983, is an inmate of the Geary County Detention Center, Junction City, Kansas (GCDC). Named defendants are Jim Jensen, Sheriff of Geary County, Kansas; J.L. Parker, Captain of Deputies at GCDC; and Glen Irwin, Shift Supervision at GCDC.


**<u>FILING FEE</u>**

Plaintiff filed a Motion for Leave to Proceed Without Prepayment of Fees (Doc. 2), and was assessed an initial partial filing fee of $28.00, which he has paid. The motion shall now be granted. However, under 28 U.S.C. §1915(b)(1), plaintiff remains obligated to pay the remainder of the $350.00 district court filing fee in this civil action. Being granted leave to proceed in forma pauperis entitles him to pay the filing fee over time through payments from his inmate trust fund account as authorized by 28 U.S.C. §1915(b)(2). Pursuant to §1915(b)(2), the Finance Office of

the facility where plaintiff is confined is directed by copy of this Order to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full.  Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

**SCREENING**

On September 14, 2006, the Court issued its Memorandum and Order explaining to Mr. Murphy that because he is a prisoner, the court is required by statute to screen his complaint and dismiss it or any portion that is frivolous or fails to state a claim on which relief may be granted.  28 U.S.C. 1915A(a) and (b).  Plaintiff was informed that upon screening his initial filings, the court found the complaint was subject to being dismissed for several reasons.  Those reasons were set forth in the Memorandum and Order, and plaintiff was given time to show cause why this action should not be dismissed.

**EXHAUSTION**

Plaintiff was fully informed in the court's prior Memorandum and Order of the legal standards regarding exhaustion of administrative remedies.  42 U.S.C. 1997e(a) was cited as providing:

"No action shall be brought with respect to prison conditions under (any federal law) by a prisoner confined in any (correctional facility) until such administrative remedies as are available are exhausted;" and plaintiff was advised that a complaint which fails to adequately plead exhaustion amounts to one that fails to state a claim upon which relief can be granted. Plaintiff was also informed that 1997e(a) mandates he either "attach a copy of the applicable administrative dispositions to the complaint, or . . . describe with specificity the administrative proceeding and its outcome;" and that he must have presented each and every claim raised in his complaint and amendments by way of the available administrative grievance procedures, or this action would be dismissed without prejudice. In its prior Memorandum, this court discussed the exhibits Mr. Murphy had attached to his complaint and why they do not demonstrate full and total exhaustion on all plaintiff's claims. Plaintiff was given time to adequately plead exhaustion in accord with the statutory standards set forth in that order.

**CLAIMS**

Following the court's show cause order, plaintiff filed his "Amendment 1" (Doc. 8) in which he delineated his five claims as denial of medical attention, denial of adequate exercise, denial of sanitary cell conditions, denial of due process with regard to administrative remedies, and denial of legal materials.

**RELIEF SOUGHT**

The relief sought by plaintiff is to be immediately examined and treated by a physician, a psychiatrist, and a dentist and receive necessary medications; be given legal materials and "full access to a legal library or someone to get copies of material from a legal library immediately to help in (his) defense and two civil cases he has filed;" have all his grievances responded to in writing; and be given proper cleaning equipment for his cell. He initially sought an award of compensatory as well as punitive damages for mental anguish "resulting from denial of medication" and for pain and suffering. After the court's show cause order, he added requests for money damages "on all his claims" including lack of exercise, denial of access, and violation of due process as well as for a transfer. Since the court's Memorandum and Order of September 14, 2006, Mr. Murphy has filed 14 pleadings and motions with numerous exhibits. Having carefully considered all materials filed by plaintiff, the court finds as follows.

**1.   Denial of medical attention**

Plaintiff alleges in support of his claim of denial of medical attention that he has had no access to a physician, a psychiatrist, and a dentist in the months he has been held in pretrial confinement at the GCDC. He claims he is in need of medical attention and

medication[1] for serious medical conditions, which have been denied. In his numerous pleadings and motions, he has stated he has bi-polar disorder, liver disorder including hepatitis C, borderline diabetes, "syncopy episodes," urinary tract infection, sleep disorder, chronic arthritis, dizzy spells, dentures which need to be adjusted, prostrate problems, and hypoglycemia[2].

However, plaintiff also has either alleged, or submitted exhibits indicating, that his sick call slips, at least those provided to the court, were referred to the nurse who visits the GCDC weekly; he has been seen by the nurse who has drawn his blood; the nurse has prescribed medications for him; he has had his blood sugar checked by jail officials; he has been seen at the local hospital for chest pains; he was seen at the local hospital apparently for his urinary tract infection and scheduled to see a urologist; he was provided with his prescribed medications once he contacted his doctor in Colorado and obtained his prescription information; and he was visited by a mental health professional for an interview to determine if he qualified for treatment. In a statement filed as a "Supplement to Complaint" (Doc. 4) on September 11, 2006, plaintiff alleged the situation with his medication had been "resolved" and he is "back on track with (his) medication."

---

[1]     Plaintiff alleged he has been on "psychotic medications" for six years, and needed access to a psychiatrist to prescribe these medications.

[2]     No documents or medical records are exhibited by plaintiff indicating who diagnosed these medical conditions and when. Nor are symptoms or events described which would inevitably have led a lay person to know that plaintiff suffers from these conditions.

Thus, it appears from plaintiff's own exhibits that he has not been denied all medical attention and medication as he has claimed.

The exhibits regarding medical attention submitted with the complaint failed to show full exhaustion on this claim[3]. Since the court's show cause order, plaintiff has submitted additional exhibits regarding medical treatment at the GCDC[4]. The court now

_____

[3]     As noted in the court's show cause order, the grievances attached to the complaint dated July 17, 2006, and August 2, 2006, are general complaints of having put in numerous sick call requests but not being seen by a doctor or psychiatrist. Complaint (Doc. 1) Attach. "D" pgs. 2, 4. In response to the July grievance, plaintiff was referred to a nurse, and apparently did not appeal further. In response to the August grievance, the Chief Jailer stated "you were seen at the E.R. last week. If you think you need to be seen by a psychiatrist, talk to your attorney and get an order." Id. In a grievance dated July 28, 2006, plaintiff stated he is bi-polar, needs to see a psychiatrist and receive medication, and his requests are being denied. The Shift Supervisor's reasonable response was that plaintiff had seen the nurse on July 27, 2006. On appeal, the chief jailer also noted that "PMH had been contacted," apparently referring to Pawnee Mental Health. The court found these exhibits did not demonstrate Mr. Murphy's total exhaustion of every claim or full exhaustion by appealing the denial of his grievances. Plaintiff has added other medical conditions since the complaint was filed.

[4]     These include exhibits of grievances and discussion of an incident on September 15, 2006, regarding medical conditions, but none of these grievances are dated prior to his filing this complaint. In his subsequent pleading entitled "Amendment 1" (Doc. 8), plaintiff for the first time alleged he has had "syncopy episodes," hepatitis C, hypoglycemia, "bad liver functions," and "dental needs" which are being ignored at GCDC. Plaintiff attached to Document 8 grievances on each of his claims dated October 12, 2006, which he alleged he sent directly to defendant Sheriff Jensen for response. He also attached an inmate sick call slip dated October 12, 2006, stating for the first time he was having difficulty releasing urine, and has chronic arthritis.

Plaintiff then filed a pleading entitled "Amendment 2" and attached 5 grievances dated October 13, 2006, directed to Defendant Captain Parker seeking relief on all his claims. With regard to his grievance that he is being denied medical attention, Captain Parker responded if facility staff see a need for you to see a doctor, you will be seen. Plaintiff expresses his disagreement with this response to the court and claims that the nurse cannot treat his hepatitis or syncopy and has given him the wrong medicine. However, his opinion does not amount to a showing that the administration's response was arbitrary or capricious, or that the system for providing medical care at the GCDC is constitutionally inadequate. Nor does plaintiff show that he properly and fully exhausted the specific claims that he is not receiving proper treatment for hepatitis or syncopy episodes.

Plaintiff also filed a pleading entitled "Amendment 4" (Doc. 11) with exhibits attached of grievances dated October 30, 2006. In his inmate grievance on medical treatment, he complains he has had a fourth "syncopy episode" and no one has addressed his "hepatitis issue." He requests

concludes that even if plaintiff could be held to have properly and fully exhausted this claim subsequent to filing his complaint, his own exhibits plainly show his complaint, as amended, liberally construed, and taken as true, fails to state a claim rising to the level of deliberate indifference.

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court recognized that the Eight Amendment's prohibition of cruel and unusual punishment applies to the inadequate provision of medical care to prison inmates[5]. Miller v. Glanz, 948 F.2d 1562, 1569 (10th Cir. 1991). However, the Court held that since only the "unnecessary and wanton infliction of pain" implicates the Eighth Amendment, it follows a prisoner raising such a claim must allege

---

to see a doctor for adjustment of his medication and treatment. No responses to these grievances are exhibited, or any appeal of a denial. Thus, it appears the process has not been completed.

Plaintiff's exhibits make it clear that he did not exhaust administrative remedies on his claims prior to filing this civil federal civil rights action as required by 42 U.S.C. 1997e(a). They also suggest he is not always attempting to use the grievance process to obtain necessary medical treatment in the most efficient manner, but at times to be difficult and  recently just to meet the exhaustion requirements so that he might proceed with this lawsuit. For an example of his being difficult, plaintiff complains his demands to see a psychiatrist have not been met, but when a mental health professional visited him for an evaluation, he refused to cooperate and complained because the professional had information about his criminal case.

Plaintiff has repeatedly made general demands in his grievances to be seen by a doctor and a psychiatrist, solely based on his opinion that he requires immediate attention from these particular professionals.  It does not appear that he has provided medical records or doctor's orders to his jailers regarding existing conditions, and he does not allege facts indicating he has presented symptoms while at the jail from which staff and the nurse must have known he could only be properly diagnosed and treated by a physician or psychiatrist.  He obviously disagrees with the GCDC's system of providing medical attention through the use of a nurse who screens sick call requests.

[5]     The Due Process Clause of the Fourteenth Amendment applies to the conditions of confinement for pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 535 FN 16 (1979). Nevertheless, the Tenth Circuit has concluded that the standards of the Eighth Amendment govern such claims. Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998) citing McClendon v. City of Albuquerque, 79 F.3d 1014, 1022 (10th Cir. 1996).

"deliberate indifference to serious medical needs." <u>Estelle</u>, 429 U.S. at 104, 106, *quoting* <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976); <u>Miller</u>, 948 F.2d at 1569. In <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991), the Court explained that the Eighth Amendment's deliberate indifference standard under <u>Estelle</u> has two components: an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind. <u>Id</u>. at 297-298. With regard to the subjective component, "allegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent . . . diagnos[is]' simply fail to establish the requisite culpable state of mind." <u>Id</u>. at 299, 305. As the Supreme Court noted in <u>Estelle</u>, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 105-6.

Most of plaintiff's allegations amount to nothing more than his disagreement with the way the GCDC provides medical treatment[6]. Plaintiff does not describe symptoms he suffered while at the GCDC, which clearly required immediate attention by a physician or psychiatrist. Instead, he has simply claimed that pre-existing conditions required his regular and immediate access to a physician

---

[6]    It has been reasoned in actions challenging an entire system of health care, that deliberate indifference to inmates' health needs may be shown by proving repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff; or by proving there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care. <u>See</u> <u>Ramos v. Lamm</u>, 639 F.2d 559, 575 (10th Cir. 1980) *and cases cited therein.* Plaintiff certainly has not provided such factual allegations here.

and a psychiatrist for treatment.  In reality, plaintiff is in temporary pre-trial confinement, and county jails often have a medical professional other than a physician initially listen to inmate medical, psychiatric and dental complaints and determine who actually needs to see a doctor or dentist and when.  Plaintiff has presented no facts occurring since his confinement at GCDC indicating his medical needs could not be met by first being seen by a nurse.  Plaintiff has no right to demand attention by a physician within hours of his submission of any sick call slip, based solely upon his opinion regarding what he requires.

Moreover, a decision by a medical professional such as a nurse, that an inmate either needs or does not need to be seen by a physician is a classic example of a matter for medical judgment.  A medical decision that a doctor visit is not necessary for treatment or medication does not represent cruel and unusual punishment.  "At most, it is medical malpractice, and as such the proper forum is state court."  Id. at 107.

Furthermore, even though the medical conditions Mr. Murphy claims he has in his complaint, amendments, and supplements could be sufficiently "serious" to meet the objective component of the deliberate indifference standard, his pleadings fail to allege facts suggesting that any of the defendants acted with the state of mind required to meet the subjective or intent component of the standard. For the foregoing reasons, based on the allegations in the complaint as amended and supplemented, the court finds plaintiff has failed to state a claim for which relief may be granted.

**2.   Denial of adequate exercise.**

Plaintiff's allegations regarding lack of outdoor exercise include that he is receiving only one hour of outdoor exercise every 7 to 10 days.  He asserts this is below "federal standards" and unconstitutional, because he is otherwise locked in his cell for 24 hours a day, which he asserts is too small and overcrowded.  He claims he is constitutionally entitled to 4 to 5 hours of outdoor exercise a week.

The court finds these allegations alone are insufficient to state a federal constitutional violation.  It is generally agreed that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates, and some courts have held a denial of fresh air and exercise to be cruel and unusual punishment under certain circumstances."  See Bailey v. Shillinger, 828 F.2d 651, 653 (10ᵗʰ Cir. 1987); Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 810 (10ᵗʰ Cir. 1999).  However, courts have not ruled that denial of outdoor exercise is per se an Eighth Amendment violation.  Id.  Even though outdoor exercise limited to one hour per week for a pretrial detainee in a county jail is "restrictive", without more it cannot be said to violate Eighth Amendment standards.  Bailey, 828 F.2d at 653.  Plaintiff's cell does not appear to be too small or overcrowded from his illustration, and is drawn with windows.  Plaintiff does not present any reason why he cannot exercise in the common or sleeping area of his cell as well as when he is allowed to go outdoors.  Moreover,

plaintiff does not allege any actual injury as having resulted from the conditions in his cell.   See Perkins, 165 F.3d at 807, FN6. Thus, even if plaintiff were held to have exhausted on this claim after the complaint was filed, no federal constitutional violation is stated.

### 3.   Denial of sanitary conditions.

Initially plaintiff alleged no facts in support of his claim of unsanitary cell conditions, and submitted no proof of exhaustion on this claim.   Since the court's show cause order pointing out these deficiencies, he has added factual allegations that garbage and other substances are stuck to the walls and ceilings of his cell, which he cannot reach with a paper towel, and his requests for "proper equipment" to clean these areas have been denied.   He further added the shower and shower curtains in his cell are not clean, and his clothing is still "grungy" after being laundered. Plaintiff has also submitted a diagram of his cell showing he sleeps in a barred area that is 12 by 15 feet with a bed and toilet; and shares a common area with one to three other inmates, which is 6 by 24 feet, containing a shower, table, and tv.

In Battle v. Anderson, 564 F.2d 388, 395 (10th Cir. 1977), the Tenth Circuit Court of Appeals upheld a district court's "finding that 60 square feet of living space was the minimum amount of square footage which the Eighth and Fourteenth Amendments require that a state provide an inmate."   Id. at 395, 397, 403. Smaller living areas for a single inmate have also been upheld.   Plaintiff's own

diagram shows a cell area much larger than 60 square feet. Moreover, plaintiff alleges he is provided cleaning materials such as cleaners, paper towels, mops and brooms, but simply insists he needs other special equipment to clean his ceiling and walls. Plaintiff does not allege facts as to why he is unable to clean his ceiling and walls with the mop. See McBride v. Deer, 240 F.3d 1287, 1291 (10th Cir. 2001); Murray v. Edwards County Sheriff's Dept., 453 F.Supp.2d 1280, 1287 (D. Kan. 2006). Nor does he state why he is unable to clean his shower and shower curtain. His own allegations indicate his clothing is laundered regularly. The court finds plaintiff does not show he properly and fully exhausted administrative remedies on all the cell conditions he challenges prior to filing this lawsuit. The court further finds the facts alleged in support of this claim fail to show actual injury and fail to rise to the level of a federal constitutional violation.

**4.   Denial of due process in grievance process**

In support of this claim plaintiff repeatedly alleges his requests and grievances are never responded to by GCDC staff. He argues his access to this court with its exhaustion prerequisite is being blocked by GCDC staff who ignore, lose, and refuse to respond to his requests and grievances. Plaintiff has presented no evidence beyond his conclusory allegations that staff at GCDC have failed to respond to his proper grievances. He has not even described the established method of filing grievances and what appeals are available at GCDC. Thus, he has not demonstrated he submitted

grievances by following the proper procedures at all available administrative levels.

The court concludes plaintiff's own exhibits are inconsistent with this claim. The dated requests, dated grievances[7], and some other materials exhibited by plaintiff include responses by staff at GCDC, contrary to Mr. Murphy's repeated conclusory claims that they never respond. Plaintiff's exhibits and allegations show he generally complained and expressed his opinions in the requests and grievances he did submit, rather than describing specific incidents or symptoms or requesting specific legal materials or copies of specific documents. He stated in response to the court's show cause order that since he filed "the initial claim" he has submitted over 20 requests, sick call slips and grievances, and received no written response for evidence. His mass submissions after the complaint was filed do not provide factual support for this claim in the complaint, and no showing is made that the post-complaint process he engaged in was proper or completed. The court concludes plaintiff has failed to show he exhausted his remedies on this claim prior to filing this civil rights action, but also that he fails to state facts sufficient to show a violation of due process.

## 5.   Denial of access to legal materials

---

[7]   Plaintiff attaches grievance forms to his "Supplement" (Doc. 7) which are not dated and do not provide to whom they were addressed. Nor do they indicate what response was given, or that he appealed if no response was provided. These exhibits do not evince that his grievances were either ignored or unanswered.

Plaintiff's initial claim of denial of access to legal materials did not include a showing of exhaustion or sufficient factual allegations in support.  Plaintiff was notified of these deficiencies[8], and the following applicable legal standards.

It is well-established that a prison inmate has a constitutional right of access to the courts.  However, to state a claim of denial of that right, the inmate must allege something more than that the jail's law library or legal assistance program is inadequate.  He must "go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim," causing him "actual injury."  Lewis v. Casey, 518 U.S. 343, 348, 350 (1996).  He must allege actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a non-frivolous legal claim has been dismissed, frustrated or impeded.  Id. at 350, 353.  Moreover, providing law library facilities and materials to inmates is merely "one constitutionally acceptable method to assure meaningful access to the courts."  Id. at 351, *citing* Bounds v. Smith, 430 U.S. 817, 830 (1977).  It

---

[8] In support of his claim of denial of access, plaintiff generally alleged in his complaint that he had requested legal materials "on a number of occasions," which were not provided. The court observed in its show cause order that no grievances were exhibited in which plaintiff complained of denial of legal materials.  As previously noted, with the complaint there was only one "inmate request form" asking for writing materials, and another asking for two Kansas statutes. There was no grievance complaining of or appealing the denial of these materials.  Since the court issued its show cause order, plaintiff has submitted only the previously described undated and undirected grievances requesting "proper law books" and "other legal materials" when needed; and post-complaint grievances.

follows that the inmate represented by counsel provided by the State in a pending action, is not necessarily entitled to a law library or legal research materials.  Plaintiff was be given time to state what court actions he was pursuing, whether or not he was represented by counsel, and how any of his cases has actually been impeded by the alleged inadequate access to legal materials.

In response, plaintiff has added allegations that he is facing criminal trial and needs legal materials in order to assist with his defense.  However, he further alleges he is being represented by appointed counsel in that matter.  Plaintiff also alleges he filed this civil rights suit and a "civil case for asset forfeiture," which he asserts require his access to legal research materials. The materials he now specifies as needed are law books, a "Prisoners' Litigation Manual", "Black's Law Book" or dictionary, legal copies and "case sites (sic)."

However, plaintiff still fails to allege the crucial fact of how any of his pending or contemplated nonfrivolous litigation has actually been impeded by the denial of access to the materials he has requested at GCDC.  See Treff v. Galetka, 74 F.3d 191, 194 (10th Cir. 1996).  He is represented by counsel in his state criminal proceeding, and has not alleged facts showing he is unable to assist in his defense without the requested materials.  In any event, the court is not convinced that the legal materials he has specified, namely Black's Law Book or Dictionary, a Prisoner's Litigation Manual, or law books and case cites in general, are necessary for him to assist competent counsel in his criminal defense.  The court

further finds the specified materials are not necessary for Mr. Murphy to litigate the instant action.  As a pro se plaintiff in this court, his statement of facts is crucial and not his ability to include legal citations.  Furthermore, Mr. Murphy's numerous filings in this case alone repudiate any claim of denial of access in this case.  Plaintiff also alleges no facts indicating the materials he specifies are necessary in his other civil action.  Nor does he exhibit any grievance in which he requested an address of a court or agency or complained that he was denied specific information of this nature.  Again, even if this court found plaintiff fully and properly exhausted this claim after he filed his complaint, it concludes he has failed to state a claim of denial of access.

In conclusion, even if this court were to hold that plaintiff has exhausted all available administrative remedies on his claims it would also find he has failed to state facts to support a claim of constitutional violation.

**IT IS THEREFORE ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) is granted.

**IT IS FURTHER ORDERED** that this action is dismissed and all relief denied.

**IT IS FURTHER ORDERED** that plaintiff's motions for rulings and hearings (Docs. 10, 11, 16, 17, 19) are denied as moot; plaintiff's motions for discovery and subpoenas (Docs. 12, 14, 15) are denied as without basis and moot; and plaintiff's motion for summary judgment (Doc. 17) and motion for restraining order (Doc. 18) are denied as

without basis and moot.

The Clerk is directed to transmit a copy of this Memorandum and Order to the Finance Office of the facility where plaintiff is currently confined.

**IT IS SO ORDERED.**

Dated this 4th day of January, 2007, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge